IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CHARNESHA ALEXANDER,      )
                          )
        Petitioner,       )
                          )
    v.                    )      Civil Action No. 3:16cv189-MHT
                          )                [WO]
UNITED STATES OF AMERICA, )
                          )
        Respondent.       )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is Charnesha Alexander's ("Alexander") *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody.  Doc. No. 1.[1]

## I.   INTRODUCTION

On November 18, 2014, Alexander pleaded guilty under a plea agreement to conspiring to defraud the United States with respect to claims, in violation of 18 U.S.C. § 286, and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).  The plea agreement contained a provision under which Alexander waived her right to appeal or collaterally attack her conviction and sentence, with exceptions for claims of ineffective assistance of counsel and prosecutorial misconduct.  Following a sentencing hearing on March 5, 2015, the district court sentenced Alexander to 111 months in prison, comprised

---

[1] References to document numbers ("Doc. No.") are to those assigned by the Clerk of Court.  Page references are to those assigned by CM/ECF.

of an 87-month sentence for the conspiracy conviction and a consecutive 24-month sentence for the identity theft conviction.

Alexander appealed, arguing that the district court erred by using the amount of intended loss, as opposed to the amount of actual loss, in determining the loss attributable to her under the sentencing guidelines.  Doc. No. 4-7.  On December 2, 2015, The Eleventh Circuit dismissed Alexander's appeal based on the appeal waiver in her plea agreement.  Doc. No. 4-8.  After her appeal was dismissed, Alexander did not seek certiorari review in the United States Supreme Court.

On March 15, 2016, Alexander filed this § 2255 motion asserting the following claims:

> 1. Defense counsel rendered ineffective assistance by failing to (1) file an appeal when Alexander requested that one be filed; (2) challenge the loss amount attributed to Alexander under the sentencing guidelines by challenging the amount of actual loss as opposed to the amount of intended loss; and (3) inform Alexander of her rights to a jury trial and an appeal.
>
> 2. Alexander's guilty plea was unlawfully induced and not knowing and voluntary, violating her constitutional right to due process under the Fifth Amendment.

Doc. No. 1 at 4–5.

On April 25, 2016, The government filed a response, arguing that all of Alexander's claims were insufficiently pleaded and without merit and that her challenge to her guilty plea was also barred by the collateralattack waiver in her plea agreement.  Doc. No. 4.

On May 16, 2016, Alexander filed a reply to the government's response, clarifying that she did not mean to argue that her counsel was ineffective for failing to file an appeal,[2] but rather that counsel was ineffective for ignoring her request that she file a petition for writ of certiorari with the U.S. Supreme Court after her direct appeal was dismissed by the Eleventh Circuit.  Doc. No. 9 at 1–2.  In addition, Alexander alleged (1) that the district court erred in the amount of restitution it ordered her to pay and (2) that the government breached the plea agreement by failing to move for a downward departure under U.S.S.G. § 5K1.1 at sentencing based on her "substantial assistance."  *Id.* at 2.

On June 28, 2017, Alexander filed pleadings construed by this court to contain a motion for leave to amend her § 2255 motion.  *See* Doc. Nos. 10,11, 12 & 12-1; *see also* Doc. Nos. 13 & 18.  In seeking to amend, Alexander reasserted her claims that her counsel was ineffective for ignoring her request that she file a petition for writ of certiorari with the Supreme Court after her direct appeal was dismissed and for failing to challenge the loss attributed to her under the sentencing guidelines.  Doc. No. 11 at 1–2.  Alexander also asserted, for the first time, that her counsel was ineffective for (1) failing to meet with her regularly and familiarize herself with the case; (2) failing to conduct adequate pretrial investigation and interview witnesses; (3) failing to explain the plea agreement to her; (4) "grossly underestimat[ing] [her] sentencing exposure" as only five years in prison; (5) failing to "show or discuss" the presentence investigation report ("PSI") with her; (6)

---

[2] Clearly, a claim that counsel failed to file an appeal lacks merit, as Alexander's counsel filed a timely notice of appeal on her behalf on March 10, 2015 (*see* Doc. No. 6-1 at 32–33), and thereafter filed a timely appellate brief with the Eleventh Circuit (*see* Doc. No. 6-1 at 34–60).

failing to challenge the district court's use of U.S.S.G. § 2B1.1 rather than U.S.S.G. § 2T1.1 (the tax evasion guideline) to determine her specific offense characteristic enhancements; (7) failing to argue that the loss attributed to her should have been limited to 130 tax returns and not the 948 tax returns involved in the entire conspiracy; (8) failing to argue for a minor role reduction in her offense level; and (9) failing to obtain a downward departure for substantial assistance that she says was promised to her.  Doc. No. 11 at 1–2.

On August 2, 2017, the government filed a response arguing that the claims raised by Alexander in her amendment are untimely under 28 U.S.C. § 2255(f)'s limitation period and, for purposes of Rule 15 of the Federal Rules of Civil Procedure, do not relate back to claims in her original § 2255 motion.  Doc. No. 17.

For the reasons that follow, the court finds that Alexander's § 2255 motion should be denied without an evidentiary hearing and this action dismissed with prejudice.  Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

## II.    DISCUSSION

### A.    General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner may secure relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for

4

transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

## B.   Ineffective Assistance of Counsel Claims

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance."  *Id*.  (internal quotation marks and brackets omitted).   "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one."  *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A "reasonable

5

probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner makes the showings required on both parts of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the required showings has not been made, it need not decide whether the other one has been made. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish … that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker[.] Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

### 1.   *Failure to File Petition for Writ of Certiorari*

Alexander claims that her counsel rendered ineffective assistance on appeal by failing to file a petition for writ of certiorari with the U.S. Supreme Court after her direct appeal was dismissed by the Eleventh Circuit although she "clearly instructed [her] attorney to file one." Doc. No. 9 at 1–2; Doc. No. 11 at 1.

Certiorari review by the Supreme Court is discretionary. *Ross v. Moffitt*, 417 U.S. 600, 617 (1974). Criminal defendants do not have a constitutional right to counsel to pursue discretionary review. *See Austin v. United States*, 513 U.S. 5, 8 (1994). Because a defendant does not have a constitutional right to counsel on discretionary appeals, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), counsel's performance cannot be deemed constitutionally deficient for a failure to petition the Supreme Court for certiorari review. *See Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982); *see also Nichols v. United States*, 563 F.3d 240, 251 (6th Cir. 2009); *Steele v. United States*, 518 F.3d 986, 988 (8th Cir. 2008). Here, Alexander has no legitimate claim under § 2255 based on her allegation that her counsel was ineffective for ignoring her request that she file a petition for writ of certiorari with the Supreme Court. *See Lynn*, 365 F.3d at 1232 (relief under § 2255 is reserved to correct errors of constitutional dimension, or fundamental errors which result in a complete miscarriage of justice).

Even if Alexander had a constitutional right to counsel on discretionary appeals, her ineffective assistance claim would fail under the second part of the *Strickland* test, because she has not shown prejudice. Alexander demonstrates no error—and makes no attempt to demonstrate error—in the Eleventh Circuit's judgment dismissing her appeal based on the waiver provision in her plea agreement. *See* Doc. No. 4-8. Nothing in the allegations of

Alexander's § 2255 motion suggests that her case would have been selected by the Supreme Court for review or that the ultimate outcome of the proceedings would have been different. *See Steele*, 518 F.3d at 988–89 (requiring petitioner to demonstrate prejudice where counsel did not file petition for certiorari by showing she would have succeeded in obtaining a writ of certiorari and a reasonable probability she would have obtained relief on her sentence).

For the reasons set forth above, Alexander is entitled to no relief on this claim of ineffective assistance of counsel.

### 2. *Failure to Challenge Loss Amount*

Alexander claims that her trial counsel was ineffective for failing to challenge the loss attributed to her under the sentencing guidelines by challenging the amount of actual loss as opposed to the amount of intended loss that resulted from her offense. Doc. No. 1 at 4; Doc. No. 11 at 2.

Under § 2B1.1(b)(1) of the sentencing guidelines, the offense level for a defendant convicted of certain economic offenses—including offenses involving fraud and deceit— is subject to a specific offense characteristic enhancement if the loss from the criminal conduct exceeded $5,000, with the extent of the enhancement determined by the amount of the loss. U.S.S.G. § 2B1.1(b)(1) (2014).[3]  Application notes clarify that, for purposes

---

[3] Alexander was sentenced on March 5, 2015. The 2014 Guidelines Manual (effective November 1, 2014) was used to determine Alexander's offense level. *See* Doc. No. 7-1 at 9, ¶ 29. The 2015 Guidelines manual (effective November 1, 2015), increased the minimum loss amount for application of the § 2B1.1(b)(1) enhancement to $6,500 and increased the various amounts of loss required to trigger various increases in the offense level enhancements under § 2B1.1(b)(1).

of § 2B1.1(b)(1), "loss is the greater of actual loss or intended loss."  U.S.S.G. § 2B1.1, cmt. n.3(A).

Here, as set out in the PSI and in the plea agreement, and as argued by the government at sentencing, the district court arrived at the loss amount attributable to Alexander by considering approximately 948 fraudulent tax returns filed between January 2011 and May 2014 through several sham tax preparation businesses claiming a total of $3,484,643 in refunds from the IRS.  *See* Doc. No. 4-4 at 6–8; Doc. No. 4-2 at 7–8, ¶ 13.c; Doc. No. 7-1 at 5, ¶ 7; 7–8, ¶¶ 15, 21 & 25; 9, ¶¶ 26 & 32.  The fraudulent returns used personally identifiable information ("PII") stolen from Carmike Cinemas and other places. Doc. No. 4-4 at 6–8; Doc. No. 4-2 at 8, ¶ 13.e.  Based on the fraudulent tax returns, the IRS paid out a total of $840,692.  Doc. No 7-1 at 8–9, ¶¶ 25 & 26.

In her plea agreement, Alexander admitted that she conspired with her then-boyfriend Robert Walker and Ladonna Conley to file the fraudulent tax returns.  *See* Doc. No. 4-2 at 7, ¶ 13.a.  She further admitted to providing stolen identities and being involved in almost every step of the conspiracy.  *See id.* at 7–8, ¶¶ 13.a–f.

Considering the evidence, the district court found that the loss attributable to Alexander as intended loss under § 2B1.1(b)(1) was $3,484,643 (the total of the fraudulent claims filed with the IRS in the conspiracy), and that this entire amount was reasonably foreseeable to Alexander.  Based on this finding, and applying § 2B1.1(b)(1), the district court imposed an 18-level specific offense characteristic enhancement to Alexander's offense level.  *See* U.S.S.G. § 2B1.1(b)(1)(J), (K) (2014) (providing for 18-level

enhancement where loss is more than $2,500,000 but less than $7,000,000); Doc. No. 7-1 at 9, ¶ 31.

Alexander's § 2255 claim notwithstanding, her trial counsel did in fact challenge the loss amount attributed to her.  The record reflects that counsel filed objections to the PSI regarding the amount of loss, *see* Doc. No. 7-2 at 1–2, and then pursued those objections at the sentencing hearing.  During sentencing, counsel argued that the loss attributed to Alexander should be reduced to cover only her conduct.  Doc. No. 4-2 at 5–6. In this regard, counsel argued that Alexander's coconspirators played a larger role in the conspiracy and that Alexander should not be held liable for their actions.  *Id.*  Counsel also argued that the large disparity between the actual loss ($840,692) and the intended loss ($3,484,643) should result in a reduced sentence for Alexander.[4]  *Id.*  The district court rejected counsel's arguments and found that the amount of intended loss was properly calculated and that Alexander was responsible for all criminal activity in the conspiracy because all conduct by her coconspirators was reasonably foreseeable to her.  *See id.* at 9.

Alexander's claim that her trial counsel was ineffective for failing to challenge the amount of actual loss, as opposed to the amount of intended loss, is vague and conclusory. For purposes of the § 2B1.1(b)(1) enhancement, intended loss and not actual loss was the controlling consideration.  *See* U.S.S.G. § 2B1.1, cmt. n.3(A) (For purposes of § 2B1.1(b)(1), "loss is the greater of actual loss or intended loss.").  Given that her trial counsel vigorously challenged the loss amount attributed to her, Alexander does not show

---

[4] This is essentially the same argument counsel presented in the brief she filed in Alexander's direct appeal. *See* Doc. No. 6-1.

that her counsel's performance in this regard was professionally unreasonable.  Moreover, Alexander fails to show how she was prejudiced by counsel's performance—as she neither demonstrates that the loss attributed to her was improperly calculated nor identifies a plausible argument or evidence that her counsel could have presented that was reasonably likely to change the district court's loss determination.  Alexander is entitled to no relief on this claim of ineffective assistance of counsel.

### 3.   Rights to Jury Trial and Appeal

Alexander contends that her trial counsel was ineffective for failing to inform her of her rights to a jury trial and an appeal.  Doc. No. 1 at 4.

Alexander's written plea agreement stated that "the Defendant has the right to plead not guilty and has the right to be tried by a jury and, at a trial thereof, has the right to the assistance of counsel, the right to confront and cross-examine witnesses against the Defendant, the right to call witnesses in the Defendant's own behalf, and the right no to be compelled to incriminate the Defendant."   Doc. No. 4-2 at 9–10, ¶ 14.d.   The plea agreement further stated that "if the defendant enters a plea of guilty herein, there will not be a further trial of any kind[,] and … by the entry of such a plea, the Defendant waives the right to a trial by jury or to a trial before the Court."   *Id*. at 10, ¶ 14.d.   The plea agreement also contained a provision under which Alexander waived her right to appeal in certain circumstances.  *Id.* at 6–7, ¶ 12. Alexander signed the plea agreement, acknowledging that she had read it and understood its terms.  *Id*. at 14.

The magistrate judge repeated these same rights to Alexander at the change of plea hearing.  During the plea colloquy, Alexander affirmed to the court that she had read and

discussed the plea agreement with her lawyers, *see* Doc. No. 4-3 at 6, and that she understood the terms of the plea agreement, *id*. at 7.  The court asked Alexander if she understood that by entering into the plea agreement she was giving up her right to appeal or collaterally attack all or part of the sentence, and Alexander stated that she understood this.  *Id*. at 10.  The court also explained that Alexander had a right to plead not guilty and would then have a right to a trial by a jury, and discussed the trial rights that Alexander would have.  *Id*. at 10–11. Alexander stated that she understood these rights and that she was waiving them.  *Id*.

Finally, Alexander exercised her right to appeal.  The same lawyer who was her trial counsel filed a notice of appeal on her behalf and then filed an appellate brief with the Eleventh Circuit challenging the district court's determination of the loss attributed to her. *See* Doc. No. 6-1 at 32–60.

The record does not support Alexander's suggestion that she was unaware of her rights to a jury trial and an appeal.  "[W]hen a defendant makes statements under oath at a plea colloquy, she bears a heavy burden to show her statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).  "There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).  Alexander's acknowledgments in the written plea agreement and her sworn statements in open court indicating she knew of her rights to a jury trial and an appeal preclude the relief she seeks.  Because Alexander knew of these rights, she cannot make the required showing of prejudice under the second prong of

*Strickland*.  Consequently, she is entitled to no relief on this claim of ineffective assistance of counsel.

## C.   Voluntariness of Guilty Plea

Alexander's § 2255 motion contains a conclusory claim that her guilty plea was unlawfully induced and not knowing and voluntary, violating her constitutional right to due process under the Fifth Amendment.  Doc. No. 1 at 5.  Alexander presents no facts or argument to support this claim.  She does not explain in what way her guilty plea was unlawfully induced or how it was unknowing and involuntary.  The conclusory nature of her claim forecloses the possibility of any relief.

The government also argues that this claim should be dismissed based on the collateral attack waiver in Alexander's plea agreement and, alternatively, because it is meritless.  Doc. No. 4 at 11–13.  The written plea agreement contained a waiver provision with the following pertinent language:

> DEFENDANT'S WAIVER OF APPEAL AND COLLATERAL ATTACK
>
> Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the Defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence.  The Defendant further expressly waives the right to appeal the conviction and sentence on any other ground and waives the right to attack the conviction and sentence in any post-conviction proceeding. This waiver does not include the right to appeal on the ground of ineffective assistance of counsel or prosecutorial misconduct.

Doc. No. 4-2 at 6, ¶ 12.  Under this provision, Alexander waived her rights to appeal or collaterally attack her conviction and sentence, except on grounds of ineffective assistance of counsel or prosecutorial misconduct.

13

An appeal waiver or collateral-attack waiver is valid if a defendant enters it knowingly and voluntarily. *See Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005); *United States v. Bushert,* 997 F.2d 1343, 1350–55 (11th Cir. 1993).  In this circuit, such waivers have been enforced consistently according to their terms. *See United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006) (collecting cases).  To enforce such a waiver, the government must demonstrate either that (1) the court specifically questioned the defendant about the waiver during the change of plea colloquy, or (2) the record shows that the defendant otherwise understood the full significance of the waiver. *Bushert,* 997 F.2d at 1351.

Nothing in the record indicates that the waiver in Alexander's case was anything but knowing and voluntary. The magistrate judge who conducted the plea hearing specifically questioned Alexander about the waiver provision and confirmed that Alexander understood the terms. Doc. No. 4-3 at 10. Thus, the record reflects (and Alexander does not disprove) that Alexander's collateral attack waiver was knowingly and voluntarily made. *Bushert,* 997 F.2d at 1351.  Consequently, the court agrees with the government that Alexander's claim that her guilty plea was unlawfully induced and not knowing and voluntary is barred from collateral review by the waiver provision in her plea agreement.  Further, as already noted above, the wholly conclusory nature of this claim by Alexander forecloses the possibility of § 2255 relief.

**D.   Restitution Amount**

In her May 16, 2016 reply to the government's response to her § 2255 motion, Alexander alleges that the district court erred in the amount of restitution it ordered her to

pay.  She appears to argue that the district court's award of restitution went beyond her offense of conviction and was based on conduct for which she was not convicted.  Doc. No. 9 at 2.

The district court's order of restitution rendered Alexander jointly and severally liable with her coconspirators to pay restitution of $840,692 to the IRS.  *See* Doc. No. 4-5 at 5–6.  This amount was based on the actual amount of money the IRS paid out for the fraudulent tax returns filed during the tax fraud conspiracy in which Alexander participated.[5]

A § 2255 motion may not be employed by a person in federal custody to attack the restitution portion of his sentence. *See Mamone v. United States*, 559 F.3d 1209, 1211 (11th Cir. 2009).  In *Mamone*, the Eleventh Circuit held that § 2255 is an inappropriate vehicle for challenging the restitution part of a sentence, regardless of whether the claim is coupled with one seeking release from custody.  *Id*. at 1210–11.  The Court reasoned:

> Our holding in *Blaik [v. United States*, 161 F.3d 1341 (11th Cir. 1998], . . . supports our conclusion that *Mamone* cannot utilize § 2255 to challenge his restitution.  *See Blaik*, 161 F.3d at 1343 (holding that "§ 2255 cannot be utilized by a federal prisoner who challenges only the restitution portion of his sentence").  In *Blaik*, we also noted that granting a restitution reduction in a § 2255 motion would be taking an action clearly not authorized by the statute's language.  *Id*. at 1342; 28 U.S.C. § 2255(a).  This same reasoning applies here.  The plain language of the statute indicates § 2255 applies to "a prisoner in custody … claiming the right to be released."  28 U.S.C. § 2255. As the Ninth Circuit determined in [*United States v.] Thiele*, [314 F.3d 399 (9th Cir. 2002),] "[n]on-cognizable claims do not morph into cognizable ones by osmosis."  314 F.3d at 402.  We agree, and conclude the presence of a

---

[5] Restitution is limited to actual loss, which a defendant is then responsible for paying back.  *See United States v. Liss*, 265 F.3d 1220, 1231 (11th Cir. 2001) ("An award of restitution must be based on the amount of loss actually caused by the defendant's conduct.").

cognizable claim against Mamone's custodial punishment does not make his non-cognizable claims more amenable to our review.

559 F.3d at 1211.

Because relief from restitution is a remedy not authorized by § 2255, this court may not grant Alexander relief on her claim that the district court erred in the amount of restitution it ordered her to pay.

Even if § 2255 could be used by a federal prisoner to challenge the restitution portion of her sentence, Alexander's claim that the district court erred in the amount of restitution it ordered her to pay is barred from collateral review by the above-mentioned waiver provision in her plea agreement. *See* Part 2.C of Recommendation.

Alexander's claim also lacks merit. She is incorrect in her assertion that the district court's award of restitution went beyond her offense of conviction and was based on conduct for which she was not convicted. The district court's restitution award was based entirely on the actual amount of money ($840,692) the IRS paid out for the fraudulent tax returns filed during the tax fraud conspiracy for which Alexander was convicted.

Finally, to the extent Alexander suggests she would not have entered a guilty plea under a plea agreement that obligated her to pay restitution based on conduct for which she was not convicted (*see* Doc. No. 9 at 2), such a claim is barred from collateral review by the waiver provision in her plea agreement. Moreover, Alexander fails to show she was induced to plead guilty based on any misunderstanding about her possible restitution obligations. The written plea agreement, which Alexander signed and affirmed she understood, contained the following language regarding restitution:

16

> The Defendant understands that, pursuant to 18 U.S.C. § 3663A(c)(1), restitution is mandatory for the offenses to which she is pleading guilty, with the amount of restitution to be determined at sentencing. The Government will not oppose the liability in the case being joint and several with any others who may be found liable because of their involvement in the same conspiracy described in the factual basis section of this plea agreement.

Doc. No. 4-2 at 5, ¶ 8. Alexander stated under oath at the change of plea hearing that she and her counsel had reviewed and discussed the plea agreement together and that she understood its terms. Doc. No. 4-2 at 6-7. She also affirmed at the same hearing that she understood she was obligated to pay restitution to any victim of her offenses. *Id.* at 8–9. There is a strong presumption that her statements made during the change of plea hearing are true. *Medlock*, 12 F.3d at 187. The IRS was the victim of the tax fraud conspiracy, and the district court's restitution award was based solely on money the IRS paid out as a result of the tax fraud conspiracy for which Alexander was convicted. Alexander is entitled to no relief on any claim she may make that she was induced to plead guilty because of her alleged misunderstanding of her possible restitution obligations.

**E.   Government's Failure to Move for § 5K1.1 Departure**

In her reply to the government's response to her § 2255 motion, Alexander also alleges that the government breached the plea agreement by failing to move for a downward departure under U.S.S.G. § 5K1.1 at sentencing based on her substantial assistance.[6] Doc. No. 9 at 2. This claim, too, is barred from collateral review by the waiver provision in Alexander's plea agreement. Moreover, Alexander's plea agreement contains no mention

---

[6] Section 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1.

whatsoever of a § 5K1.1 departure for substantial assistance, much less a promise by the government to move for a § 5K1.1 departure if it determined that Alexander had provided it with substantial assistance. Nor does Alexander demonstrate, or even allege, an impermissible motive for the government's failure to move for a downward departure. *See United States v. Forney*, 9 F.3d 1492 1502 (11th Cir. 1993) (emphasis omitted) ("[J]udicial review [of the government's decision not to file a U.S.S.G. § 5K1.1 motion] is appropriate when there is an allegation and a substantial showing that the prosecution refused to file a substantial assistance motion because of a constitutionally impermissible motivation, such as race or religion.").

Alexander is entitled to no relief on her claim that the government breached the plea agreement by failing to move for a § 5K1.1 substantial assistance departure at sentencing.

## F.   Alexander's June 2017 Amendment

On June 28, 2017, Alexander amended her § 2255 motion to add claims[7] that her trial counsel rendered ineffective assistance of counsel by:

(1)   failing to meet with her regularly and familiarize herself with the case;

(2)   failing to conduct adequate pretrial investigation and interview witnesses;

---

[7] Among the pleadings she submitted to this court on June 28, 2017, Alexander filed a pleading styled as a motion to withdraw her previously filed § 2255 motion and to file an amended § 2255 motion in its place. Doc. No. 10.  If Alexander had been allowed to withdraw her previously filed § 2255 motion and file an amended § 2255 motion in its place, only those claims that she presented in the amended § 2255 motion would have been properly before the court, and *all* of those claims would have been clearly time-barred under 28 U.S.C. § 2255(f)(1) since the amendment was filed well over a year after her conviction became final. Therefore, this court construed her pleadings to contain a motion for leave to amend her § 2255 motion to add claims and granted her leave to amend. *See* Doc. Nos. 13 & 18.

(3)   failing to explain the plea agreement to her;

(4)   grossly underestimat[ing] [her] sentencing exposure" as only five
years in prison;

(5)   failing to "show or discuss" the PSI;

(6)   failing to challenge the district court's use of U.S.S.G. § 2B1.1 and
not U.S.S.G. § 2T1.1 (the tax evasion guideline) to determine her
specific offense characteristic enhancements;

(7)   failing to argue that the loss attributed to her should have been
limited to only 130 tax returns and not the 948 tax returns involved
in the entire conspiracy;

(8)   failing to argue for a minor role reduction in her offense level; and

(9)   failing to obtain a downward departure for substantial assistance that
she says was promised to her.

Doc. No. 11 at 1–2; *see also* Doc. Nos. 10, 12 & 12-1.  Alexander sets forth all the claims

in her amendment in a cursory fashion with little supporting argument and few, if any,

supporting facts.

The government argues that, for purposes of Rule 15 of the Federal Rules of Civil

Procedure, the claims raised by Alexander in her amendment do not relate back to claims

in her original (and timely) § 2255 motion and that all of her new claims are time-barred

under the one year limitation period in 28 U.S.C. § 2255(f).[8]  Doc. No. 17.

---

[8] The timeliness of a § 2255 motion is governed by 28 U.S.C. § 2255(f), which provides:

A 1-year period of limitation shall apply to a motion under this section.  The
limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(continued…)

19

### 1.    *Alexander's New Claims Are Time-Barred.*

As a general rule, a § 2255 motion must be filed within a year of the date on which the petitioner's judgment of conviction becomes final.   *See* 28 U.S.C. § 2255(f)(1).[9] Regarding this limitation period, the Supreme Court has stated that "a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."   *Clay v. United States*, 537 U.S. 522, 525 (2003).   The time for seeking certiorari review in the Supreme Court expires 90 days after entry of judgment by the appellate court.   *See* Rule 13, Rules of the Supreme Court of the United States.   Alexander's direct appeal was dismissed by the Eleventh Circuit on December 2, 2015.   Ninety days from that date is March 1, 2016.   Therefore, any motion by Alexander seeking relief under § 2255 must have been filed by March 1, 2017.

---

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

[9] Alexander sets forth no facts or argument to establish that she may use 28 U.S.C. § 2255(f)(2), (3), or (4) as a triggering event for limitations purposes for any of the claims in her amendment.   *See* 28 U.S.C. § 2255(f)(2)–(4).

Alexander filed the amendment to her § 2255 motion on June 28, 2017—119 days after expiration of the limitation period in § 2255(f)(1).

The Federal Rules of Civil Procedure provide for the relation back of amendments filed after the running of a period of limitation in certain circumstances. Rule 15(c) of the Federal Rules of Civil Procedure provides that "[a]n amendment of a pleading relates back to the date of the original pleading when … the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *See* Fed.R.Civ.P. 15(c)(2). "'Relation back' causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when the timely claims were filed." *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000).

New claims asserted in an amendment do not relate back to timely asserted claims where they arise from conduct and occurrences separate from the conduct and occurrences forming the basis of the timely asserted claims. *See Davenport*, 217 F.3d at 1346. "Congress did not intend Rule 15(c) to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts." *Pruitt v. United States*, 274 F.3d 1315, 1317 (11th Cir. 2001). This is so the government has sufficient notice of the facts and claims giving rise to the proposed amendment. *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002) (quoting *Anthony v. Cambra*, 236 F.3d 568, 576 (9th Cir. 2000)).

"An untimely amendment to a § 2255 motion which, by way of additional facts, clarifies or amplifies a claim or theory in the original motion may, in the district court's discretion, relate back to the date of the original motion *if and only if … the proposed*

*amendment does not seek to add a new claim or to insert a new theory into the case*." *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001) (emphasis in original) (citation omitted).  It is not sufficient for an untimely amendment merely to assert the same general type of legal claim as in the original § 2255 motion.  *See United States v. Craycraft*, 167 F.3d 451, 456–57 (8th Cir. 1999) (holding that an untimely claim of ineffective assistance of counsel for not filing an appeal did not relate back to timely ineffective assistance claims for not pursuing a downward departure, not raising an objection at trial, and not challenging a prior conviction).

Here, the court finds that none of the nine new claims of ineffective assistance of counsel asserted by Alexander in her June 28, 2017 amendment relate back under Fed.R.Crim.P. 15(c) to claims in her original and timely § 2255 motion, or to claims in her May 16, 2016 reply to the government's response to her § 2255 motion.  The claims in Alexander's amendment arise from conduct and occurrences separate from the conduct and occurrences forming the basis of the claims in her original § 2255 motion and reply, bear no legal or factual relationship to those earlier claims, and seek to insert new theories of relief into her case.  Because these new claims do not relate back, they are time-barred from review under § 2255's one-year limitation period.  *See Farris v. United States*, 333 F.3d 1211, 1215–16 (11th Cir. 2003); *Pruitt*, 274 F.3d at 1319.

### 2.  *Any New Claims That Arguably Relate Back to Timely Claims Lack Merit.*

#### a.  Failure to explain plea agreement and underestimation of sentence

Under a more lenient application of the relation-back rule, the court finds it arguable that two of the ineffective assistance of counsel claims in Alexander's otherwise untimely

amendment—her claims that her trial counsel failed to explain the plea agreement to her and "grossly underestimated" her sentencing exposure as only five years in prison—relate back to her claim in her § 2255 motion that her guilty plea was unlawfully induced and not knowing and voluntary.  As indicated above in this Recommendation, Alexander's claim regarding the voluntariness of her guilty plea is conclusory and entirely unsupported by facts or argument.  The court is left to guess how she allegedly was induced to plead guilty, or how her plea was not knowing and voluntary. Alexander does little better with the claims in her amendment, where she makes only a conclusory assertion that counsel did not explain the plea agreement to her and does not discuss the circumstances under which her counsel allegedly underestimated her sentencing exposure.  In any case, even assuming that these two claims in Alexander's amendment are rendered timely under the relation-back rule, they do not entitle her to § 2255 relief, because she fails to prove that her counsel did not explain the plea agreement to her or that her guilty plea was induced by erroneous assurances from her counsel about her sentencing exposure.

The *Strickland* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  A petitioner alleging ineffective assistance in this context must establish that counsel's performance was deficient (i.e., professionally unreasonable) and that counsel's deficient performance "affected the outcome of the plea process."  *Hill*, 474 U.S. at 59.  To establish prejudice, then, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, she would … have pleaded [not] guilty and would … have insisted on going to trial."  *Id*.  A mere allegation by a defendant that she would have insisted on going to trial

but for counsel's errors is insufficient to establish prejudice; rather, the court will look to the factual circumstances surrounding the plea to determine whether the defendant would have proceeded to trial.  *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001); *United States v. Arvantis*, 902 F.2d 489, 494 (7th Cir. 1990); *see also Holmes v. United States*, 876 F.2d 1545 (11th Cir. 1989) (*Hill* does not require a hearing merely because a defendant asserts a claim of ineffectiveness of counsel when the record affirmatively contradicts the allegations).

The transcript of the change of plea hearing reflects that the magistrate judge correctly advised Alexander of the statutory maximum sentence for the conspiracy count (not more than ten years) and the statutory mandatory sentence for the identity theft count (two years, required to run consecutively to any other sentence).  Doc. No. 4-3 at 8.  The written plea agreement, which Alexander signed, set forth this same information.  Doc. No. 4-2 at 1–2. The written plea agreement contained no sentencing recommendation or specific provision regarding the length of Alexander's sentence, other than providing that the government agreed to recommend she receive a sentence at the bottom of the applicable guidelines range while also providing that the government agreed to the appropriateness of a two-level reduction in Alexander's offense level under U.S.S.G. § 3E1.1(a), for acceptance of responsibility, and agreed to recommend at sentencing that Alexander

receive an additional one-level reduction under § 3E1.1(b) if she timely assisted authorities with information about her misconduct.[10]  *Id.* at 3–4, ¶¶ 1 & 2.

Alexander stated under oath at the change of plea hearing that she and her counsel had reviewed and discussed the plea agreement together and that she understood its terms. Doc. No. 4-3 at 6–7.  Alexander also affirmed during the change of plea hearing that, other than the plea agreement, no one had made any promises or assurances to her to persuade her to plead guilty and that the written plea agreement represented the entirety of any understanding she had with the government.  *Id.* at 6–8.  She further affirmed to the court that she and her counsel had discussed how the advisory sentencing guidelines would apply in her case.  *Id.* at 9.  Alexander also acknowledged that she understood her sentence would be determined by a combination of advisory guidelines, possible authorized departures from those guidelines, and other statutory sentencing factors.  *Id.*

The written plea agreement contained language whereby Alexander acknowledged her understanding that the Probation Office would prepare a PSI for the court before her sentencing and that the offense level and criminal history category as determined by the Probation Office could differ from any estimate given to her by her counsel or by the

---

[10] As part of the plea agreement, the government dismissed 11 counts of wire fraud for which Alexander was also indicted and 10 additional counts of aggravated identity theft.  *See* Doc. No. 4-2 at 1–4.  Had Alexander been convicted of the additional identity theft counts, she would have been subject to a mandatory two-year term of imprisonment on each count, with the district court having the discretion to run such terms consecutively or concurrently, in whole or in part, with the sentence imposed for the remaining identity theft count.  *See* Doc. No. 7-1 at 16–17, ¶ 76.

(continued…)

government.  Doc. No. 4-2 at 12, ¶ 16.  Finally, the written plea agreement contained the

following acknowledgment by Alexander:

> I have read the foregoing Plea Agreement and the Addendum to the Plea Agreement,[11] understand the same, and the matters and facts set forth therein accurately and correctly state the representations that have been made to me and accurately set forth the conditions of the Plea Agreement and the Addendum to the Plea Agreement that have been reached.

> In addition to the foregoing provisions to which I agree, I swear under penalty of perjury that the facts in the "factual basis" paragraph above are true and correct and that I am satisfied that I have received competent advice and representation from my defense counsel.

*Id*. at 14.

The record does not support Alexander's claim that her trial counsel failed to explain

the plea agreement to her, or her claim that she was induced to plead guilty by erroneous

assurances from her counsel regarding her sentence. As previously noted, "when a

defendant makes statements under oath at a plea colloquy, she bears a heavy burden to

show her statements were false," *Rogers*, 848 F.2d at 168, and "[t]here is a strong

presumption that the statements made during the [guilty plea] colloquy are true," *Medlock*,

12 F.3d at 187.  Alexander's sworn statements in open court that her counsel explained the

plea agreement to her and that her guilty plea had not been induced by any assurances or

promises outside the plea agreement, and her averment in the written plea agreement that

she understood the sentence imposed might differ from any estimate made by her attorney,

preclude the relief she seeks.  Such statements by Alexander bear the presumption of truth

---

[11] The addendum to the plea agreement provided only that there were no additional provisions in the plea agreement.  *See* Case No. 3:14cr34-MHT (Doc. No. 78).

and contradict her present assertions.  *See United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984) (record did not support defendant's claim that her guilty plea was improperly induced by her attorney's assurances regarding the length of the sentence where, among other things, district court explicitly inquired about coercion and was assured by the defendant there had been none); *Stillwell v. United States*, 709 F. App'x 585, 590 (11th Cir. 2017) (§ 2255 relief not warranted on claim that counsel was ineffective for giving petitioner incorrect advice regarding possible sentence because both plea agreement and district court informed petitioner she could not rely on counsel's estimated sentence and that the court retained all sentencing discretion).

Further, an inaccurate prediction about sentencing alone will generally not be sufficient to sustain a claim of ineffective assistance of counsel.  *See United States v. Pease*, 240 F.3d 938, 940–41 (11th Cir. 2001) (rejecting ineffective assistance of counsel claim where the court warned the defendant during the plea colloquy that he may face a sentence higher than anticipated and informed defendant of statutory minimum and maximum); *Arvanitis*, 902 F.2d at 494–95 (no ineffective assistance where claim based only on inaccurate prediction of sentence).

Alexander does not offer facts or evidence sufficient to meet her "heavy burden" to rebut her own sworn statements at her plea hearing and in her plea agreement.  *See Medlock*, 12 F.3d at 187; *Rogers*, 848 F.2d at 168.  The record does not support her assertions that her counsel was ineffective for failing to explain the plea agreement to her inducing and for inducing her to plead guilty with erroneous assurances about the length of her sentence.  *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir.

2014) (stating that, where a defendant tenders only her own affidavit to counter previous directly inconsistent testimony regarding plea coercion, "[t]he district court is entitled to discredit [the] defendant's newly-minted story about being threatened when that story is supported only by the defendant's conclusory statements."). Therefore, Alexander is not entitled to any relief on these claims in the amendment to her § 2255 motion.

### b.   Arguing to limit attributable loss to 130 tax returns

The court also finds it arguable, under a lenient application of the relation-back rule, that Alexander's claim in her amendment that her trial counsel was ineffective for failing to argue that the loss attributable to her should have been limited to only 130 tax returns, and not the 948 tax returns involved in the entire conspiracy, relates back to her claim in her § 2255 motion that her trial counsel was ineffective for failing to challenge the loss attributed to her by challenging the amount of actual loss as opposed to the amount of intended loss.[12]   However, even if Alexander's new claim is deemed timely under the relation-back rule, the record shows that Alexander's trial counsel vigorously challenged the amount of loss attributed to her, arguing that the loss attributed to her should be reduced to cover only her conduct and that the large disparity between the actual loss and the intended loss should result in a reduced sentence for Alexander. As noted above in this Recommendation, the district court rejected counsel's arguments and found that the

---

[12] A factor against finding this claim in Alexander's amendment to relate back to her original claim concerning counsel's alleged failure to challenge actual loss versus intended loss is that the number of tax returns Alexander says she should have been held accountable for, 130, appears to be based on the number of fraudulent tax returns filed from an IP address associated with Alexander's cousin. *See* Doc. No. 4-4 at 12. This issue is not directly related to question of which fraudulent tax returns the IRS actually paid out on or the total amount of money the IRS paid out. Instead, this issue is more closely related to the argument that Alexander was not responsible for the unlawful acts of her coconspirators.

amount of intended loss was properly calculated and that Alexander was responsible for all criminal activity in the conspiracy because all conduct by her coconspirators was reasonably foreseeable to her.  Alexander does not demonstrate that the loss attributed to her was improperly calculated.  Moreover, she fails to show that an argument that the loss attributed to her should have been limited to only 130 tax returns would have been successful or was reasonably likely to change the district court's loss determination.  Alexander is entitled to no relief on this claim in the amendment to her § 2255 motion.

c.   <u>Failure to obtain §5K1.1 departure</u>

Finally, the court finds it arguable, under a lenient application of the relation-back rule, that Alexander's claim in her amendment that her trial counsel was ineffective for failing to obtain a downward departure for substantial assistance, which she says was promised to her, relates back to her claim, raised in her reply to the government's response to her § 2255 motion, that the government breached the plea agreement by failing to move for a downward departure under U.S.S.G. § 5K1.1 based on her substantial assistance.  However, as indicated above in this Recommendation, Alexander's plea agreement contains no mention of a § 5K1.1 substantial assistance departure or any promise by the government to move for a § 5K1.1 departure if it determined Alexander provided it with substantial assistance. Nor does Alexander point to any evidence of her substantial assistance to the government that would warrant her trial counsel's arguing to the district

court for § 5K1.1 departure at sentencing.[13]  Alexander is entitled to no relief on this claim in the amendment to her § 2255 motion.

## III.   CONCLUSION

For the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Alexander be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation or before March 19, 2018.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. § 636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

---

[13] At sentencing, the district court asked the government's counsel if the government intended to move for a § 5K1.1 departure, and the government's counsel stated no.  Doc. No. 4-4 at 5.  When Alexander's counsel then indicated she believed a substantial assistance reduction under Fed.R.Crim.P. 35 "may be in the making," the government's counsel stated, "Depending on how things progress, that is a possibility, Your Honor."  *Id.*

Done, on this the 5th day of March, 2018.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge